**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**HEALTH CARE LOGISTICS, INC.,**
    **Plaintiff,**

**v.**                                    **Case No. 2:06-CV-815**
                                          **JUDGE EDMUND A. SARGUS, JR.**
                                          **Magistrate Judge Terence P. Kemp**

**ADONIX TRANSCOMM, INC.,**
    **Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of the Defendant's Motion to Stay this action and Compel Arbitration (Doc. #20). For the reasons that follow, the motion to compel arbitration is granted.

## I.

Plaintiff Health Care Logistics, Inc., ["Plaintiff"], brings this action claiming breach of contract, promissory estoppel, unjust enrichment, fraud and fraudulent inducement, negligent misrepresentation and breach of the duty of good faith, in connection with contracts Plaintiff entered into with Defendant Adonix Transcomm, Inc., ["Defendant"] for computer software and software services. The action was originally filed in the Court of Common Pleas for Pickaway County, Ohio and was removed to this Court on the basis of diversity jurisdiction. 28 U.S.C. §§ 1332, 1441. The Plaintiff is an Ohio corporation and the Defendant is a Pennsylvania corporation. The amount in controversy is in excess of $75,000.

Following removal, Defendant filed a Motion to Dismiss Plaintiff's Complaint pursuant

to Fed. R. Civ. P. 12(b)(6)[1]. Nevertheless, the Defendant moves to stay this case pending arbitration which, according to the Defendant is a mandatory provision of the parties' agreement. The Plaintiff opposes the motion.

In November 2005, the parties entered into two written agreements, a Software License and Support Agreement and a Professional Services Agreement. In January 2006, the parties executed a Software Agreement Addendum, which contains the following provision:

> (3) We agree that in the event of any dispute between Adonix and HCL, there should be a dispute resolution procedure that begins at the operations level and then proceeds to the manager or supervisory level and lastly to the respective presidents of the two companies. In the event they cannot come to a satisfactory conclusion with respect to any particular dispute, then the issue will be given to a third party for resolution. If the parties cannot agree upon a third party decision-maker, they will each appoint one person and the two people so appointed shall appoint a third person and the majority of the three people will be entitled to decide the dispute. The decision of the third party decision-maker will be binding upon both HCL and Adonix. During this process, the contractual obligations of the parties will be adhered to in every respect and the cost to remedy this dispute relative to the participation of any third party decision-maker will be shared equally.

(Exhibit 5, *Complaint*).

The Defendant argues that the foregoing is an enforceable arbitration provision. The Plaintiff disagrees, for several reasons. First, Plaintiff notes that the agreement does not use the word "arbitration." Second, Plaintiff argues that any dispute resolution is permissive, not mandatory, because the agreement uses the word "should." Third, Plaintiff argues that permissive dispute resolution is contemplated only for disputes arising during the life of the contract because the parties agreed that "[d]uring this process, the contractual obligations of the

---

[1]The motion remains pending. In view of the disposition of the motion to stay, the motion to dismiss (Doc. #6) is denied as moot.

2

parties will be adhered to in every respect . . . ." (*Id.*).  According to Plaintiff, the provision, at

most, covers only disputes that occur while the parties are performing under the contract and "not

disputes which led one party or the other to terminate the agreement." (*Memorandum contra* at

9).

## II.

The Federal Arbitration Act ["FAA"], 9 U.S.C. § 1, *et seq.*, was enacted to "reverse the

longstanding judicial hostility to arbitration agreements that had existed at English common law

and had been adopted by American courts, and to place arbitration agreements upon the same

footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)

(citations omitted).  The FAA establishes that, as a matter of federal law, "any doubts concerning

the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone*

*Memorial Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24-25 (1983).

Under § 2 of the FAA, an arbitration agreement is "valid, irrevocable, and enforceable,

save upon such grounds as exist in law or in equity for the revocation of any contract."  9 U.S.C.

§ 2.

> When considering a motion to stay proceedings and compel arbitration under the
> [Federal Arbitration] Act, a court has four tasks: first, it must determine whether
> the parties agreed to arbitrate; second, it must determine the scope of that
> agreement; third, if federal statutory claims are asserted, it must consider whether
> Congress intended those claims to be nonarbitrable; and fourth, if the court
> concludes that some, but not all, of the claims in the action are subject to
> arbitration, it must determine whether to stay the remainder of the proceedings
> pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000), citing *Compuserve, Inc. v. Vigny Int'l*

*Finance, Ltd.*, 760 F.Supp. 1273, 1278 (S.D. Ohio 1990). Thus, the Court is to "examine the language of the contract in light of the strong policy in favor of arbitration." *Id.* Although federal law sets forth the policy in favor of arbitration, whether the agreement is itself enforceable is resolved by fundamental precepts of the applicable state contract law. *See Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1014 (6th Cir. 2003). In this case, the parties agreed that Pennsylvania law would govern the contracts at issue.

With respect to the argument that the arbitration provision in this case cannot apply if one party stops performing under the contract, the Plaintiff relies on *Emmaus Municipal Authority v. Eltz*, 416 Pa. 123 (1964). The case involved a claim for breach of contract for a construction project. The court concluded that the arbitration provision[2] was intended to apply only while the contract was being performed because a particular portion of the contract stated that "a demand for arbitration shall be filed in no case later than the time for final payment." *Id.* at 126. Another clause stated that the "contractor shall not cause delay of the construction during any arbitration proceeding." Thus, the court held that "the arbitration procedure was not intended to survive the life of the contract but only to aid in the administration of the contract during its life." *Id.*

Plaintiff argues that the *Emmaus* decision is controlling because the arbitration provision in this case provides that "[d]uring this [the arbitration] process, the contractual obligations of the parties will be adhered to in every respect . . . ." (Exhibit 5, *Complaint*). The Defendant contends that the duty to arbitrate survives termination of the agreement. The Court does not find the *Emmaus* decision controlling. While the provision in this case contains language stating that the contractual obligations are to be adhered to during the arbitration process, the provision

---

[2]The actual provision is not quoted in the court's opinion.

also states that the arbitration provision covers "any dispute." In the Court's view, this broad language means that any dispute about breach of the contract, including breach for one party's alleged failure to continue performance, is covered by the provision. Such broad language was not contained in the arbitration provision in the *Emmaus* case.

The Court finds this case analogous to *Chester City School Auth. v. Aberthaw Construction Co.*, 460 Pa. 343 (1975)[3]. In *Chester*, a school district sued a construction company for breach of contract. The contract contained a provision for arbitration of "[a]ll claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof . . . ." 460 Pa. at 351. The provision also stated that the contractor "shall carry on the Work and maintain the progress schedule during any arbitration proceedings . . . ." *Id.* The Pennsylvania Supreme Court held that the arbitration provision was enforceable and concluded that the case was not governed by *Emmaus*. With respect to the provision stating that work under the contract shall continue during arbitration, the court stated:

> This clause . . . read in context with the other pertinent provisions, does not justify the conclusion that the parties intended the obligation to arbitrate to end at the termination of the agreement. . . . To accept the view urged would render the first sentence [of the provision] which provides for "all claims, disputes and other matters in question . . . arising out of, or relating to, this Contract or the breach thereof, . . . shall be decided by arbitration . . ." without meaning. . . . It is therefore completely inconsistent to suggest that a unilateral repudiation or termination was intended to foreclose the right to resort to arbitration.

460 Pa. at 354.

In the Court's view, the same result applies in the case at bar. Thus, to the extent the Plaintiff argues that the arbitration provision does not survive unilateral termination of the

---

[3]Plaintiff cites this case but maintains that *Emmaus* is controlling.

contract, the argument is without merit.

Plaintiff also disputes the enforceability of the arbitration provision because it states that "there *should* be a dispute resolution procedure. . . ." (Exhibit 5, *Complaint*) (emphasis added). According to Plaintiff, this language indicates that arbitration is permissive, not mandatory. Plaintiff cites *Sch. Dist.,Township of Amity v. Daniel Boone Joint Sch. Sys.*, 411 Pa. 188 (1963) in support of its position.  At the outset, the Court observes that this case is not about the enforceability of an arbitration provision. Rather, the court considered language in a joint school district agreement providing that the site for a school building "should be near the geographical center of the jointure or in close proximity thereto." *Id.* at 192.  The court concluded that the drafters of the agreement intended that the school board would have some latitude in selecting what would be the geographical center.  The court stated that because the agreement used "shall" in other places, "should" did not mean "shall." *Id.* at 192-93.

The Court does not find the decision in *Township of Amity* necessarily helpful in the context of determining the enforceability of an arbitration provision.  In the Court's view, use of the word "should" in the first sentence of paragraph 3 does not mean that the arbitration process is permissive.  The provision goes into specific detail about the process and the selection of arbitrators, as well as the binding effect of the decision and the bearing of costs.  More importantly, the second sentence of paragraph 3 states that a disputed issue "will be given to third party for resolution."  This sentence contains mandatory language.  In view of the extent of detail as to the procedure, the Court cannot conclude that the parties intended, by use of the word "should" in the first sentence, to make the process permissive.  This is especially true in view of the fact that the provision covers "any dispute."  Thus, Plaintiff's argument that use of the word

6

"should" precludes enforcing the agreement is without merit.  To hold otherwise would negate the basic meaning of the second sentence and render it meaningless.  By construing the entire paragraph to require arbitration, the first sentence then logically expresses the desire of the parties to resolve disputes extrajudicially.

Finally, the Court concludes the failure to include the word "arbitration" in the actual provision is of no consequence.  Plaintiff does not cite any authority in support of its argument that the failure to include the word "arbitration" defeats enforceability of the provision.  The Court finds that the agreement clearly indicates an intent to arbitrate any dispute.  The failure to specifically call the process "arbitration" is of no moment.

### III.

The Defendant's Motion to Stay and Compel Arbitration (**Doc. #20**) is **GRANTED**.  The Defendant's Motion to Dismiss (**Doc. #6**), the Defendant's Motion for Protective Order (**Doc. #21**) and the Plaintiff's Motion to Compel Discovery (**Doc. #22**) are **DENIED as moot.**

This action is **STAYED** and shall proceed to Arbitration in accordance with the terms of the parties' agreement.  The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED.**

7-2-2007
**DATE**

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**

7